**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RUSSELL WEATHERS,** | : | |
| **Petitioner** | : | |
| | : | **No. 1:20-cv-1098** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **KEVIN KAUFFMAN,** *et al.*, | : | |
| **Respondents** | : | |

## <u>MEMORANDUM</u>

On June 30, 2020, *pro se* Petitioner Russell Weathers ("Petitioner"), who is presently incarcerated at the State Correctional Institution in Huntingdon, Pennsylvania ("SCI Huntingdon"), initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. No. 1.) Petitioner filed a memorandum of law in support of his § 2254 petition on November 3, 2020.  (Doc. No. 12.)  Respondents filed their response on November 23, 2020. (Doc. No. 14.)  Petitioner filed a traverse on December 14, 2020.  (Doc. No. 16.) Accordingly, Petitioner's § 2254 petition is ripe for disposition.

## I.   BACKGROUND

### A.   Procedural History

On February 11, 2015, following a jury trial in the Court of Common Pleas for Dauphin County, Pennsylvania, Petitioner was found guilty of two counts of aggravated assault and one count of simple assault.  (Doc. No. 14-1 at 3.)  The Superior Court of Pennsylvania set forth the background of the case as follows:

We set forth the following pertinent factual and procedural history of this case.  In 2013, [Petitioner] was charged with two counts of aggravated assault and one count of simple assault, arising from [Petitioner's] August 1, 2013 physical attack on his girlfriend, Abigail Shaw.

> Shaw and [Petitioner] had become involved in a romantic relationship beginning in August 2012.  As the relationship progressed, around November 2012, the two moved in together at [a] South 2nd Street apartment along with [] Shaw's three children.

> Shaw testified at trial [as] to her version of the relationship with [Petitioner] and the events of August 1, 2013.  [] Shaw described her relationship with [Petitioner] as initially good until the end of November 2012, when she encountered her first bout of violence with him.

Trial Court Opinion, 11/23/2015, at 3-4 (citations omitted).  Shaw testified that [Petitioner continued to abuse her regularly and, by April 2013, "the assaults became daily occurrences."  Id. at 5.

The incident that gave rise to the charges in this matter occurred in the early morning hours of August 1, 2013.  [] Shaw had returned from her classes for the day where she found [Petitioner] listening to music on his iPad.  She stated that around 7:00 p.m. he had gotten emotional while listening to music that he used to enjoy with his deceased mother so, he stormed out of the house saying he was going to buy cigarettes.

Later, around 9:00 p.m., [] Shaw took her children to the grocery store but when she returned, she realized that she had locked herself out of the apartment.  She placed a note on the front door stating [that] she was locked out and attempted to find a place to stay in the meantime.  After being unsuccessful at finding a friend who was home, Shaw returned to the apartment to wait in [her] car for [Petitioner] to return.  She later awoke to a cab pulling in behind her parked car with [Petitioner] in the front passenger seat.  Shaw explained that she knew it was [Petitioner] because they used cabs regularly and, since [Petitioner] and the cab driver were friends, he would ride in the passenger seat.  [] Shaw approached the passenger door saying she had

been locked out when [Petitioner']s arm came out of the open window and, as he said "bitch, you're playing me," he smacked her head off the front hood of the vehicle.  [Petitioner] then got out of the car, grabbed Shaw by the neck and slammed her to the ground while her 8 year old son was watching.  As she was on her back, he smacked her head against the street and punched her in the face while repeatedly calling her a bitch.  [] Shaw remembers [Petitioner] leaving in the cab and then driving [herself] to Harrisburg Hospital.

On that same night, Mark Cicak [] was returning home from his employment from UPS in Harrisburg.  He had worked the night shift[,] which usually ended between 2:00 a.m. and 4:00 a.m.  While driving in the far left lane on South 2nd Street around 3:00 a.m., [] Cicak saw a couple on the sidewalk to his left against a parked car, who he thought were in an intimate embrace until the man threw the woman to the ground and began assaulting her.  [] Cicak immediately called 911.  He then circled the nearby blocks so he could driver past on Second Street again.  He reported that the male was wearing a white T-shirt, jeans and a black hat.  When [] Cicak arrived back on Second Street, he saw the same pair but now the assault was occurring in the street with the male punching and kicking the female.  At all times, Cicak was on the telephone with 911 describing the events he was witnessing.  He passed them and looped around a third time when he saw the assault stop and the male jump into the passenger side of a cab and leave.  [] Cicak tried to follow the cab straight on Second Street to obtain a license plate number; however, he was unsuccessful.  He then circled back a third time to ascertain the condition of the female but, when he arrived at the area where the assault took place, she was gone.  After one more loop to see if she was walking along Second Street, he encountered the police at the scene of the assault.  [] Cicak stopped to speak with the police to relay what he had witnessed.

*Id.* at 6-7 (citation omitted).

Once Shaw arrived at the hospital, she received medical attention for her injuries.  It was determined that Shaw's nose was fractured in three places.  *Id.* at 8.  At the hospital, Shaw spoke to police and identified [Petitioner] as her attacker.  *Id.* at 9.  However, in the months that followed, Shaw, indecisive as to whether or not to continue or end the relationship, stayed in contact with [Petitioner] and eventually recanted

her identification of [Petitioner] as her attacker.  *Id.* at 12-13. Subsequently, Shaw cut off contact with [Petitioner].  *Id.* at 13.

At trial, Shaw identified [Petitioner] as the man who attacked her. Additionally, Cicak testified that shortly after the incident, police contacted him to discuss the assault he had witnessed.  *Id.* at 7-8.  Cicak met with police and identified [Petitioner] from a photo array as the man he saw attacking a woman on Second Street.  *Id.*

> Appellant testified on his own behalf to present his version of events.  At the time of the August 1, 201[3] incident, [Petitioner] was working for a painting contractor.  He testified that on the night beginning July 31, 201[3] and leading into the morning of August 1, 201[3], he was working with an individual named Mike to finish painting apartment units at hallways at the Camp Hill Plaza Apartments.  [Petitioner] said that they were up against a deadline so the two decided to stay late and finish the painting.

> [Petitioner] had seen [] Shaw earlier in the day when she came to the job site asking to trade in the rental car they had been driving for a different one.  He left work for a time to travel with Shaw to change rental vehicles.  [Petitioner] stated that after the cars were traded he called his co-worker[, Anthony Moore,] to pick him up and bring him back to the work site.  From work he went back to Mike's apartment in downtown Harrisburg for a break then returned to the job site to finish painting until approximately 2:00 a.m.  [Petitioner] then spent the night at Mike's place.

(Doc. No. 14-11 at 1-2.)  On March 20, 2015, the trial court sentenced Petitioner to serve a minimum of 108 months and a maximum of 240 months' incarceration. (Doc. No. 14-1 at 3.)  Petitioner filed a post-trial motion to exclude evidence of a 911 call from 2012 as well as other incidents of abuse Shaw allegedly suffered at the hands of Petitioner.  (Doc. No. 14-3 at 3.)  That motion was denied by the trial court. (*Id.*)

4

Petitioner subsequently appealed to the Superior Court of Pennsylvania, arguing that: (1) the trial court erred in denying his post-trial motion and (2) the evidence was insufficient to convict him of aggravated assault.  (*Id.* at 3-4.)  On August 22, 2016, the Superior Court affirmed Petitioner's judgment of sentence.  (Doc. No. 14-5 at 1.)  On February 22, 2017, the Supreme Court of Pennsylvania denied Petitioner's petition for allowance of appeal.  *Commonwealth v. Weathers*, 678 MAL 2016 (Pa.).

On February 28, 2018, Petitioner filed a *pro se* Post Conviction Relief Act ("PCRA") petition in the Court of Common Pleas for Dauphin County.  (Doc. No. 14-6.)  Petitioner noted that he did not want a lawyer to represent him.  (*Id.* at 3.)  The PCRA court conducted a *Grazier*[1] hearing and concluded that Petitioner had made a knowing, intelligent, and voluntary waiver of his right to counsel during PCRA proceedings.  (Doc. No. 14-8 at 121.)  Petitioner filed an amended PCRA petition on June 13, 2018.  (*Id.* at 122.)  In his PCRA petition, Petitioner raised the following claims for relief: (1) trial counsel was ineffective for failing to subpoena alibi witnesses Gene the Harrisburg cab driver and Anthony Moore; (2) counsel was ineffective and "failed to challenge the District Attorney of committing fraud on the Court by allowing fabricated statements and testimonies of the Commonwealth witnesses and contradicting statements"; (3) the District Attorney's Office

---

[1] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

intimidated witnesses; and (4) trial counsel failed to "present the prison conversation of Ms. Shaw being bullied by the District Attorney's Office." (*Id.*)  In his Amended PCRA petition, Petitioner asserted: (1) he was denied a fair trial because Shaw declared that he had not caused her injury or damage to the apartment; (2) Shaw repeated those statements in her testimony during Petitioner's preliminary hearing; (3) Petitioner "found *ex parte* hearings"; and (4) "inappropriate comments by the Commonwealth." (*Id.*)  On August 29, 2018, the PCRA court issued a memorandum order and a notice that it intended to dismiss Petitioner's PCRA petition without a hearing.  (Doc. No. 14-11 at 3.)  Petitioner responded to the notice, and the PCRA court dismissed his petition on October 9, 2018.  (*Id.*)

Petitioner timely appealed to the Superior Court, arguing that he was entitled to relief based upon: (1) after-discovered evidence of Shaw's 2017 conviction for false reporting; (2) the discovery of *ex parte* communications between the Commonwealth, magisterial district judge, trial court, and Shaw; (3) the PCRA court's two denials of his requests for discovery; and (4) ineffective assistance of trial counsel for failing to call witnesses.  (*Id.*)  The Superior Court affirmed the dismissal of Petitioner's PCRA petition on July 19, 2019.  (Doc. No. 14-11.)  On March 11, 2020, the Supreme Court of Pennsylvania denied Petitioner's petition for allowance of appeal.  *Commonwealth v. Weathers*, 549 MAL 2019 (Pa.).  This Court received Petitioner's § 2254 petition on June 30, 2020.  (Doc. No. 1.)

6

## B.     Habeas Claims Presented

Petitioner raises the following claims for relief in his § 2254 petition:

1.  Newly-discovered evidence;

2.  After-discovered evidence;

3.  Crimen falsi violation;

4.  Ex parte communications and ex parte hearing violations;

5.  Discovery rights violation;

6.  Ineffective assistance of counsel;

7.  Misapplication of law; and

8.  Illegality of sentence.

(Doc. No. 1 at 5-14.)[2]

## II.     STANDARD OF REVIEW

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *See Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 414, 146 (1998)).  The exercise of restraint by a federal court in reviewing and granting habeas

---

[2] In an Order dated August 4, 2020, the Court indicated that Petitioner's § 2254 petition appeared to be untimely.  (Doc. No. 9.)  In a show cause Order dated November 4, 2020, the Court directed Respondents to file a response to Petitioner's § 2254 petition and address, *inter alia*, Petitioner's assertion that he was entitled to equitable tolling of the statute of limitations.  (Doc. No. 13.)  In their response, Respondents concede that Petitioner's § 2254 petition is timely.  (Doc. No. 14 at 2.)  The Court, therefore, declines to address the timeliness of Petitioner's § 2254 petition and will instead consider whether his claims for relief are exhausted and, if so, whether he is entitled to relief.

relief is appropriate due to considerations of comity and federalism. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). "The States possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights. Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law." *Id.* States also have a recognized interest in the finality of convictions that have survived direct review within the state court system. *See Brecht v. Abrahamson*, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a). If a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).

For claims of ineffective assistance of counsel raised in a habeas petition, the Court must consider the two components to demonstrating a violation of the right to effective assistance of counsel as set forth by the Supreme Court in *Strickland v.*

8

*Washington*, 466 U.S. 668 (1984).  First, the petitioner must show that counsel's performance was deficient.  This requires showing that "counsel's representation fell below an objective standard of reasonableness."  *See id.* at 688; *see also Williams v. Taylor*, 529 U.S. 362, 390-91 (2000).  Second, under *Strickland*, the petitioner must show that he was prejudiced by the deficient performance.  "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland*, 466 U.S. at 687.  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *See id.* at 694.  The *Strickland* test is conjunctive and a habeas petitioner must establish both the deficiency in the performance prong and the prejudice prong.  *See Strickland*, 466 U.S. at 687; *Dooley v. Petsock*, 816 F.2d 885, 889 (3d Cir. 1987).  As a result, if a petitioner fails on either prong, he loses.  *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted); *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any

order, but need not address both if Mr. Foster fails to make a sufficient showing of one.").

The two-pronged test established in *Strickland* "qualifies as 'clearly established Federal law'" for purposes of the AEDPA. *See Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 391 (2000)). Therefore, under § 2254(d)(1), the relevant inquiry in assessing ineffectiveness claims that have been adjudicated on the merits is whether the state court's decision involved an unreasonable application of *Strickland* or are based on an unreasonable determination of the facts. *See Jacobs v. Horn*, 395 F.3d 92, 107 n.9 (3d Cir. 2005). Moreover, Pennsylvania's three-pronged test for ineffective assistance claims, *see Commonwealth v Pierce*, 515 Pa. 153, 527 A.2d 973, 975-77 (Pa. 1987), is not contrary to *Strickland*, *see Jacobs*, 395 F.3d at 107 n.9.

## III.  DISCUSSION

### A.  Ground Seven: Non-Cognizable on Habeas Review

In Ground Seven, Petitioner suggests that the Superior Court erred when it upheld the PCRA court's denial of his claim regarding newly- and after-discovered evidence. (Doc. No. 12 at 39.)  According to Petitioner, the Superior Court erroneously concluded that he "presented bald assertions in justifying how his newly/after-discovered evidence claim satisfied the four-prong test requirement for such evidence." (*Id.*)  To the extent Petitioner is raising a claim of error in his PCRA

appellate proceedings, he cannot do so. "[H]abeas proceedings are not the appropriate forum for [Petitioner] to pursue claims of error at the PCRA proceeding." *Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004); *see also Holland v. Folino*, No. CIV.A. 13-6623, 2015 WL 1400660, at *1 (E.D. Pa. Mar. 26, 2015) (noting that "[e]rrors alleged during state collateral review are non-cognizable on federal review"). As the United States Court of Appeals for the Third Circuit has explained:

> The federal courts are authorized to provide collateral review where a petitioner is in state custody or under a federal sentence imposed in violation of the [C]onstitution or the laws or treaties of the United States. 28 U.S.C. §§ 2254, 2255. Thus, the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation.

*Hassine v. Zimmerman*, 160 F.3d 941, 954-55 (3d Cir. 1998). Thus, to the extent Petitioner's claim is based on alleged error that occurred during his PCRA proceedings, it is not cognizable.[3]

## B. Exhaustion and Procedural Default

The Court must next determine whether Petitioner's grounds for relief presented in his § 2254 petition have been exhausted in the state courts and, if not, whether circumstances exist to excuse Petitioner's procedural default of his claims.

---

[3] In any event, Ground Seven is essentially a restatement of Grounds One and Two, which the Court discusses *infra*.

Respondents maintain that Ground Eight is procedurally defaulted. (Doc. No. 14 at 28.)

Absent unusual circumstances, a federal court should not entertain a petition for writ of habeas corpus unless the petitioner has satisfied the exhaustion requirement articulated in 28 U.S.C. § 2254(b). Under § 2254(c), a petitioner will not be deemed to have exhausted his available state remedies if he had the right under the law of the state to raise, by any available procedure, the question presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). A petitioner may exhaust a federal claim either by raising it on direct appeal or presenting it in post-conviction PCRA proceedings. *See id.* at 845. In addition, a claim is exhausted when it has been "fairly presented" to the state court. *See Picard v. Connor*, 404 U.S. 270, 275 (1971). To that end, the federal habeas claim "must be the substantial equivalent of that presented to the state courts." *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). The petition must do so "in a manner that puts [the respondents] on notice that a federal claim is being asserted." *See Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005). "The Supreme Court has instructed that a claim is not 'fairly presented' if the state court 'must read beyond a petition or brief . . . in order to find material' that indicates the presence of a federal claim." *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 542 (3d Cir. 2014) (quoting *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)). Moreover, a habeas corpus petitioner has the burden of proving the

exhaustion of all available state remedies.  *See* 28 U.S.C. § 2254.  Overall, the exhaustion requirement advances the goals of comity and federalism while reducing "piecemeal litigation."  *See Duncan v. Walker*, 533 U.S. 167, 180 (2001).

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is an absence of available State corrective process."  *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).  Claims deemed exhausted because of a state procedural bar are considered to be procedurally defaulted.  *See, e.g.*, *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000).  The district court then analyzes the claims under the procedural default doctrine.  *See id.*  The purpose of this rule is to prevent habeas petitioners from avoiding the exhaustion doctrine by defaulting their claims in state court.  *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  In *Cone v. Bell*, 556 U.S. 449 (2009), the United States Supreme Court explained:

> It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state law ground that is independent of the federal question and adequate to support the judgment. In the context of federal habeas proceedings, the independent and adequate state ground doctrine is designed to ensure that the State's interest in correcting their own mistakes is respected in all federal habeas cases. When a petitioner fails to properly raise his federal claims in state court, he deprives the State of an opportunity to address those claims in the first instance and frustrates the State's ability to honor his constitutional rights. Therefore, consistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief

in federal court, we have held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review.

*Id.* at 465 (internal quotations and citations omitted).

However, habeas corpus review is not barred in every instance in which a state court invokes a procedural rule to preclude its review of the federal claims asserted by a state prisoner.  A state procedural rule can preclude federal habeas corpus review "only when the state rule is 'independent of the federal question [presented] and adequate to support the judgment.'"  *See Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Nara v. Frank*, 488 F.3d 187, 199 (3d Cir. 2007)).  The requirements of independence and adequacy are distinct.  *See id.*  A rule is "independent" if it is not dependent on any federal constitutional question, but "[a] state procedural ground will not bar federal habeas relief if the state law ground is 'so interwoven with federal law' that it cannot be said to be independent of the merits of a petitioner's federal claims."  *See Johnson v. Pinchak*, 392 F.3d 551, 557 (3d Cir. 2004).  A rule is "adequate" if it was "firmly established, readily ascertainable, and regularly followed at the time of the purported default."  *See Levya*, 504 F.3d at 366 (quoting *Szuchon v. Lehman*, 273 F.3d 299, 372 (3d Cir. 2001)).

A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if the petitioner can demonstrate either: (1) "cause" for the default and

14

"actual prejudice" as a result of the alleged violation of federal law; or (2) that the failure to consider the claims will result in a "fundamental miscarriage of justice." *See Coleman*, 501 U.S. at 750.  In order to show "cause and prejudice" sufficient to overcome a state court default, a petitioner must demonstrate the "cause" for his default and "prejudice" attributable thereto. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000) (citing *Harris v. Reed*, 489 U.S. 255 (1989)).  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Under the "prejudice prong," a petitioner has the burden of showing "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *See United States v. Frady*, 456 U.S. 152, 170 (1982); *see also Holland v. Horn*, 519 F.3d 107, 112 (3d Cir. 2008).

To show a "fundamental miscarriage of justice," a petitioner must establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *See Schlup v. Delo*, 513 U.S. 298, 326 (1995).  Demonstrating actual innocence requires a stronger showing than that needed to establish prejudice. *See id.*  In *Goldblum v. Klem*, 510 F.3d 204 (3d Cir. 2007), the United States Court of Appeals for the Third Circuit explained the applicable two-step inquiry as follows.

First, a "court must decide 'whether the petitioner has presented new reliable evidence . . . not presented at trial,'" and second, if a petitioner "puts forth new evidence not considered by the jury, a court asks 'whether it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *See id.* at 225 (citing *Hummard v. Pinchak*, 378 F.3d 333, 340 (3d Cir. 2004)).  If a petitioner can meet this standard by establishing "cause and prejudice" or a "fundamental miscarriage of justice," his default will be excused, and the Court may review the merits of the claim presented.  *See id.*

In Ground Eight, Petitioner argues that his sentence is illegal and violates the Fifth, Sixth, and Fourteenth Amendments because the sentencing judge did not give any reason to deviate from the sentencing guidelines.  (Doc. No. 12 at 41-44.) Respondents maintain that Ground Eight is procedurally defaulted because Petitioner never raised it before the state courts and is now time-barred from doing so.  (Doc. No. 14 at 28.)  In the instant case, the record is clear that Petitioner never presented this claim to the state courts.  Respondents are correct that Petitioner cannot return to state court to file a PCRA petition raising this ground because the PCRA's statute of limitations has expired.  *See* 42 Pa. Cons. Stat. § 9545(b) (noting that a PCRA petition must "be filed within one year of the date the judgment becomes final" and that "a judgment becomes final at the conclusion of direct

review").[4]  Thus, because Ground Eight was not raised in the state courts and Petitioner can no longer return to state court to present it, Ground Eight is procedurally defaulted.

Petitioner suggests that he can establish cause and prejudice for his default of Ground Eight based upon governmental interference with his access to the courts. (Doc. No. 12 at 45.)  According to Petitioner, the law library at SCI Huntingdon has been closed because of the COVID-19 pandemic and that this closure establishes cause to excuse his default because it is an "impediment upon [his] rights to effectively appeal his claims" to this Court.  (*Id.* at 46-47.)  While the Court is cognizant that the COVID-19 pandemic has led to restrictions on the use of law libraries within the prisons, Petitioner advances no compelling argument to establish cause and prejudice for his failure to raise Ground Eight before the state courts. Moreover, Petitioner does not assert that a fundamental miscarriage of justice will occur if this Court does not consider his claim.  *See Coleman*, 501 U.S. at 750. Accordingly, federal review of Ground Eight is barred, and the Court will dismiss that claim for relief.

---

[4] While § 9545 sets forth limited exceptions to this rule, none is applicable to Petitioner's claims. Petitioner does not make any allegations that the Government in any way interfered with his ability to file a PCRA petition or with his direct appeal, and he does not rely on a constitutional right newly recognized by the United States Supreme Court or the Supreme Court of Pennsylvania. *See* 42 Pa. Cons. Stat. § 9545(b)(1)(i), (iii).  Petitioner also does not allege that he could not have discovered the basis of these claims through the exercise of due diligence. *See id.* § 9545(b)(1)(ii).

### C.    Merits of Petitioner's Remaining Claims

### 1.    Grounds One and Two

In Grounds One and Two, Petitioner maintains that he is entitled to a new trial based upon newly/after-discovered evidence.  (Doc. No. 12 at 2-13.)  Petitioner indicates that in 2017, two (2) years after Petitioner was found guilty, Shaw was convicted for making false reports concerning a domestic aggravated assault.  (*Id.*) He suggests that this evidence suggests that Shaw made false claims that led to his conviction and that her 2017 conviction suggests that he is actually innocent.  (*Id.*)

With respect to these claims, the Superior Court stated:

As noted *supra*, [Petitioner's] "after-discovered evidence" is the discovery of Shaw's 2017 guilty plea for false reporting. [Petitioner's] Brief at 10.  [Petitioner] avers Shaw's conviction stems from her "falsely accusing a man of domestic assault" in July 2017. *Id.*; *See also id.* at Exhibit A-1 (news article from Fox 43 detaining Shaw's charges). [Petitioner] contends Shaw's subsequent conviction proves his innocence.

We review this claim mindful of the following.

After-discovered evidence is a basis for a new trial only if it: (1) has been discovered after the trial and could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely for impeachment purposes; and (4) is of such a nature and character that a different verdict will likely result if a new trial is granted.

[*Commonwealth v.*] *Cobbs*, 759 A.2d [932,] 934 [(Pa. Super. 2000)]. Here, the PCRA court found [Petitioner's] after-discovered evidence claim did not entitle him to relief because "[t]he after-discovered

evidence rule cannot be used to solely impeach a witness's credibility." Order, 10/9/2018.

Upon review, we find the PCRA court's conclusion that the alleged after-discovered evidence would not be used for anything beyond impeaching Shaw's credibility to be supported by the record. Clearly, Shaw's false reporting conviction could be introduced only to attack the credibility of Shaw, especially considering Shaw's 2017 conviction stemmed from a wholly unrelated matter involving an individual who was **not** [Petitioner].

Moreover, this Court is unpersuaded by [Petitioner's] bald assertions that Shaw's conviction, which occurred two years after [Petitioner] was found guilty of assaulting Shaw, constitutes more than impeachment evidence. It neither proves his innocence nor would result in a different verdict. *See Commonwealth v. Griffin*, 137 A.3d 605, 610 (Pa. Super. 2016) (quoting *Commonwealth v. Castro*, 93 A.3d 818, 827, n.13 (Pa. 2014) (finding that "[e]ven if his impeachment would 'destroy and obliterate' a witness, it is still impeachment" and "a new trial could not be granted . . . on that basis alone")); *Commonwealth v. Foreman*, 55 A.3d 532, 537-538 (Pa. Super. 2012) (finding Foreman's after-discovered evidence did not entitle him to relief when, *inter alia*, Foreman "failed to show any nexus between his case and Detective Simon's alleged misconduct in an incident, which occurred more than two years after [Foreman's] conviction"). Accordingly, we agree with the PCRA court that [Petitioner] is not entitled to relief on his after-discovered evidence claim.

(Doc. No. 14-11 at 3-4.) The Superior Court noted further that the "after-discovered evidence" could also be considered merely cumulative because, at trial, "defense counsel questioned Shaw about her 2008 conviction for false reporting, false statements, and theft by unlawful taking." (*Id.* at 6.) Moreover, Petitioner "fail[ed] to account for the fact that Cicak witnessed the assault and identified [Petitioner] as the individual he saw attacking Shaw." (*Id.*) Although Petitioner argued that his

identification was faulty, "it was within the province of the jury, as fact-finder to assess the credibility of testifying witnesses." (*Id.*)

"The Supreme Court has not yet recognized the existence of a freestanding claim of actual innocence." *Wright v. Sup't Somerset SCI*, 601 F. App'x 115, 119 (3d Cir. 2015). Instead, "the Supreme Court treats actual innocence as a gateway for consideration of procedurally defaulted claims." *Id.*; *see also Schlup v. Delo*, 513 U.S. 298, 327-29 (1995) (requiring a showing, with respect to procedurally defaulted claims, "that it is more likely than not that no reasonable juror woul dhavbe convicted [the petitioner] in the light of the new evidence"). The Supreme Court has explained that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). The *Herrera* Court, however, left open the possibility of a freestanding claim of actual innocence, particularly in the context of a capital case:

> We may assume, for the sake of argument in deciding this case, that in a capital case a truly persuasive demonstration of "actual innocence" made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim. But because of the very disruptive effect that entertaining claims of actual innocence would have on the need for finality in capital cases, and the enormous burden that having to retry cases based on often stale evidence would place on the States, the threshold showing for such an assumed right would necessarily be extraordinarily high.

*Id.* at 417.

In the instant case, even if a freestanding claim of actual innocence is cognizable, the Court concludes that Petitioner's claim "do[es] not satisfy the *Schlup* gateway standard, much less the 'extraordinarily high' standard required by *Herrera*." *Wright*, 601 F. App'x at 121. The state courts reasonably concluded that evidence of Shaw's 2017 conviction could only be used to impeach her, and that such evidence would be cumulative because defense counsel questioned her about her 2008 conviction for false reports. (Doc. No. 17-1 at 123-24.) Moreover, Mark Cicak testified that he witnessed the assault and identified Petitioner as the attacker. (*Id.* at 177-98.) While Petitioner maintains that Cicak's identification was faulty, "federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Upon review of the record, the Court concludes that Petitioner has not demonstrated that the state court's disposition of these claims was contrary to, or was an unreasonable application of, United States Supreme Court precedent. Moreover, Petitioner has not demonstrated that the state court's determination of the facts was unreasonable. Accordingly, Grounds One and Two will be dismissed.

### 2.     Ground Three

In Ground Three, Petitioner asserts that the evidence used to convict him cannot stand because it must deemed unreliable for violating "crimen falsi" standards. (Doc. No. 12 at 14.)  The Court construes Petitioner's argument as one regarding the weight and the sufficiency of the evidence against him.  With respect to the sufficiency of the evidence, the Superior Court stated the following in its opinion regarding Petitioner's direct appeal:

> [Petitioner's] second claim of error is a challenge to the sufficiency of the evidence with respect to the "serious bodily injury" element of the aggravated assault statute.  It is well established that:

>> As a successful sufficiency of the evidence claim precludes a re-trial and results in discharge as to the crime in question, we address [Petitioner's] sufficiency challenges at the outset.  *Commonwealth v. Brown*, 52 A.3d 320, 324 (Pa. Super. 2012).  In analyzing such claims, "we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt."  *Id.* at 323.  Critically important, we must draw all reasonable inferences from the evidence in favor of the Commonwealth as the verdict winner.  *Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013).  "Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail."  *Brown, supra* at 323.  Of course, "the evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. *Id.*

> The Commonwealth can meet its burden "by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Id.* It is improper for this Court "to re-weigh the evidence and substitute our judgment for that of the fact-finder." *Id.* Additionally, "the entire record must be evaluated and all evidence actually received must be considered." *Id.*

*Commonwealth v. Kelly*, 78 A.3d 1136, 1139 (Pa. Super. 2013).

The pertinent sections of the aggravated assault statute with which [Petitioner] was charged read as follows:

> **(a) Offense defined.**—A person is guilty of aggravated assault if he:
>
> (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
>
> (2) attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c) or to an employee of an agency, company or other entity engaged in public transportation, while in the performance of duty;
>
> *******
>
> (18 Pa. C.S. § 2702(a)(1)-(2)).

[Petitioner] specifically challenges the sufficiency of the evidence presented by the Commonwealth to prove serious bodily injury. The law on this issue is well-established. The appellate courts have defined "serious bodily injury" as, "[b]odily injury which creates a substantial risk of death or which causes serious permanent disfigurement, or

23

protracted loss or impairment of the function of any bodily member or organ."  (18 Pa. C.S. § 2301).  With respect to the Commonwealth's burden of proof:

> In order to sustain a conviction for aggravated assault, the Commonwealth does not have to prove that the serious bodily injury was actually inflicted but rather that the Appellant acted with the specific intent to cause such injury.  *Commonwealth v. Lewis*, 911 A.2d 558, 564 (Pa. Super. 2006).  Further,

> [w]here the victim does not sustain serious bodily injury, the Commonwealth must prove that the appellant acted with specific intent to cause serious bodily injury.  The Commonwealth may prove intent to cause serious bodily injury by circumstantial evidence.  In determining whether the Commonwealth proved the Appellant had the requisite specific intent, the fact-finder is free to conclude the accused intended the natural and probable consequences of his actions to result therefrom.  A determination of whether an appellant acted with intent to cause serious bodily injury must be determined on a case-by-case basis.

> An intent is a subjective frame of mind, it is of necessity difficult of direct proof[.]  We must look to all the evidence to establish intent, including, but not limited to, appellant's conduct as it appeared to his eyes[.]  Intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances. Moreover, depending on the circumstances even a single punch may be sufficient."

*Commonwealth v. Holley*, 945 A.2d 241, 247 (Pa. Super. 2008) (internal citations and quotations omitted).

Upon review of the record, the evidence presented at trial viewed in light most favorable to the Commonwealth as the verdict winner is more than sufficient to establish that Ms. Shaw suffered serious bodily injury.  Cast in the light of the past circumstances of [Petitioner] and Shaw's violent relationship, including prior assaults and calls to 911

with threats to kill the female in the house, the jury heard testimony about Ms. Shaw being thrown down and having her head pounded against the hood of an automobile and the sidewalk. The assault eventually spilled out into the street which put her at risk of being struck by an automobile in addition to suffering a beating. Mr. Ahmay witnessed the beating and also testified to witnessing [Petitioner] punching and kicking Ms. Shaw. Ms. Shaw was treated at the hospital emergency room due to the assault as she had sustained a broken nose, facial lacerations and bruises as well as a concussion. The overwhelming evidence of record would easily permit the jury to infer that [Petitioner] intended to inflict serious bodily injury to Ms. Shaw. Whether the injuries were actually life threatening, although a strong argument may be made that they were, is of no moment as "the conduct giving rise to the inference that the defendant intended to inflict serious bodily harm need not in itself be life threatening." *Commonwealth v. Catering*, 451 Pa. Super. 42, 46, 678 A.2d 389, 391 (1996) *citing Commonwealth v. Elrod*, 572 A.2d 1229, 1231. Accordingly, [Petitioner's] conviction for aggravated assault must stand as this Court did not err in denying his Motion for a Directed Verdict of Acquittal.

(Doc. No. 14-5 at 9-10.)

The standard of review used by a federal court when addressing a claim regarding the sufficiency of the evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The credibility of witnesses, the resolution of conflicts of evidence, and the drawing of reasonable inferences from proven facts all fall within the exclusive province of the factfinder and, therefore, are beyond the scope of federal habeas sufficiency review. *See id.* Accordingly, the only question

under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *See Coleman v. Johnson*, 566 U.S. 650, 656 (2012).

Upon consideration of the Superior Court's thorough discussion and the evidence presented at Petitioner's trial, as described *supra*, the Court concludes that the state courts' conclusions were a reasonable determination of the facts in light of the evidence presented, and was neither contrary to, nor an unreasonable application of, clearly established federal law.  As noted above, Petitioner challenges the reliability of the evidence presented against him, particularly that provided by Shaw and Cicak.  However, a court reviewing a § 2254 petition has "no license to redetermine credibility of witnesses whose demeaner has been observed by the state trial court, but not by them."  *See Marshall*, 459 U.S. at 434; *see also Valenzuela v. Pennsylvania*, No. 18-1246, 2019 WL 4139285, at *1 (E.D. Pa. Aug. 30, 2019) (noting that "[i]t is for the jury to sort out any inconsistences in the record"); *Davis v. Lavan*, No. 03-40211, 2004 WL 2166283, at *9 (E.D. Pa. Sept. 23, 2004) (noting that "a claim that a verdict is against the weight of the evidence is not cognizable on habeas review because it requires an assessment of the credibility of the evidence presented at trial, and a state court's credibility determinations are binding on a federal habeas court").  Petitioner, therefore, is not entitled to relief, and Ground Three will be dismissed.

### 3.    Ground Four

In Ground Four, Petitioner maintains that his due process rights were violated by the Commonwealth and trial court engaging in *ex parte* communications and hearings.  (Doc. No. 12 at 21.)  He suggests that although the charges against him were initially dismissed when Ms. Shaw failed to appear to testify at a preliminary hearing, the Commonwealth visited Magistrate Robert Jennings on October 2, 2013 and "schemed to manufacture a probable cause scenario."  (*Id.* at 21-22.)  The Commonwealth then acquired an arrest warrant for Ms. Shaw.  (*Id.*)  On October 4, 2013, during an *ex parte* hearing, the warrant for Ms. Shaw's arrest was rescinded and bail was set.  (*Id.* at 23-24.)  Petitioner argues that he "was not permitted to attend and knew nothing of this until years later."  (*Id.* at 24.)  He asserts that the Commonwealth and trial court "engaged in *ex parte* communications with the magistrate to have the petitioner's criminal matter bound over for trial regardless of the fact there was no complaining victim."  (*Id.* at 26.)  He suggests that the *ex parte* communications and hearings "were designed to coercively modify Ms. Shaw's mindset toward Petitioner from exculpatory to inculpatory."  (*Id.* at 29.)

With respect to this claim, the Superior Court stated:

Next, [Petitioner] avers he "was denied a fair trial, due process, and equal protection under the law[,]" when the Commonwealth, magisterial district judge and the trial court took part in *ex parte* communications with Shaw without [Petitioner's] knowledge. [Petitioner's] Brief at 25-31.

Our Supreme Court has defined the term *ex parte* as:

> On one side only; by or for one party; done for, in
> behalf of, or on the application of, one party only.
> A judicial proceeding, order, injunction, etc., is said
> to be *ex parte* when it is taken or granted at the
> instance and for the benefit of one party only, and
> without notice to, or contestation by any person
> adversely interested.

> *Commonwealth v. Carpenter*, [725 A.2d 154, 168-69 (Pa.
> 1999)] (citation omitted).  With exceptions not applicable
> here, both the Code of Judicial Conduct and Rules of
> Professional Responsibility prohibit *ex parte*
> communications.  *See* Code of Judicial Conduct Rule 2.9,
> and Rule of Professional Conduct 3.5(b).

*Commonwealth v. McCullough*, 201 A.3d 221, 229 (Pa. Super. 2018).

"Initially, we must determine whether this claim is cognizable under
the PCRA because the PCRA limits the *types* of claims that are
cognizable." *Commonwealth v. Moore*, 653 A.2d 24, 25 (Pa. Super.
1995) (emphasis in original).  *See* 42 Pa. C.S. § 9543(a)(2)
(enumerating seven classes of claims cognizable under the PCRA).
[Petitioner] asserts that he is eligible for relief under the PCRA because
the alleged *ex parte* communications constituted a violation of his
constitutional rights and therefore, is a cognizable claim pursuant to 42
Pa. C.S. § 9543(a)(2)(i) (specifically providing that an alleged
"violation of the Constitution of this Commonwealth or the
Constitution or laws of the United States which, in the circumstances
of the particular case, so undermined the truth-determining process that
no reliable adjudication of guilt or innocence could have taken place"
is cognizable under the PCRA).  [Petitioner's] Reply Brief at 3
(unnumbered).  However, [Petitioner] "fails to rationalize how this
alleged error 'so undermined the truth-determining process that no
reliable adjudication of guilt or innocence could have taken place.'  42
Pa. C.S. § 9543(a)(2)(i)." *Commonwealth v. Gwynn*, 943 A.2d 940,
951 (Pa. 2008).  Thus, we are inclined to find that [Petitioner] failed to
"plead and prove by a preponderance of the evidence" that he is entitled
to relief.  42 Pa. C.S. § 9543(a).

Regardless, even if [Petitioner] raised and pled properly a cognizable post-conviction issue, we would conclude it lacks merit.  In this case, [Petitioner] cites hearings that were held in relation to a material witness bench warrant issued by the trial court against Shaw upon the Commonwealth's request.  [Petitioner's] Brief at 26-29.  In essence, [Petitioner] claims that by arresting Shaw and subjecting her to a period of incarceration, the trial court and Commonwealth engaged in harassing behavior to force Shaw into lying about [Petitioner's] involvement in the assault after Shaw stated several times that her assailant was unknown to her.  *Id.*

The PCRA court responded to [Petitioner's] claim as follows.

> [Petitioner] raises a claim of th[e trial c]ourt having *ex parte* hearings [with] Shaw.  At first, [] Shaw was reluctant to testify against [Petitioner].  The Commonwealth sought a material witness warrant . . . .  [Petitioner] seems to claim that the [c]ourt erred when it ordered "[u]pon arrest, [Shaw] is to be brought before th[e trial c]ourt only."  However, that is what the rule provides.  *See* Pa. R. Crim. P. 150(a)(1) ("[w]hen a defendant or witness is arrested pursuant to a bench warrant, he or she shall be taken without unnecessary delay for a hearing on the bench warrant.  The hearing shall be conducted by the judicial officer who issued the bench warrant, or, another judicial officer designated by the president judge or by the president judge's designee to conduct bench warrant hearings.").  Here, the Commonwealth sought a material witness warrant to procure [Shaw's] testimony at trial.  Accordingly, this issue is without merit.

Memorandum Order, 8/29/2018, at 5 (some citations omitted).

Here, [Petitioner] appears to conflate unlawful *ex parte* communications with hearings held in relation to a bench warrant issued against Shaw to compel her testimony at trial.  These hearings were not only lawful, but were required under the Pennsylvania Rules of Criminal Procedure.  *See* Pa. R. Crim. P. 150(a)(1), *supra*.  No relief is due.

29

(Doc. No 14-11 at 4.)

Upon review of the record, the Court concludes that Petitioner has not demonstrated that the state court's disposition of this claim was contrary to, or was an unreasonable application of, United States Supreme Court precedent. Moreover, Petitioner has not demonstrated that the state court's determination of the facts was unreasonable. Petitioner has presented no evidence to suggest that the Commonwealth and trial court engaged in unlawful *ex parte* communications designed to coerce Shaw's testimony. Moreover, to the extent Petitioner believes his due process rights were violated by the lack of his presence at the proceedings regarding Shaw's material witness warrant, such a claim lacks merit. A defendant is guaranteed the right to be present ay any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure. *See Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). A "critical stage" is characterized by an opportunity for the exercise of judicial discretion or when certain legal rights may be lost if not exercised at that stage. *Mempa v. Rhay*, 389 U.S. 128, 135 (1967). Due process, however, does not require a defendant's presence where "there is no indication that [the defendant] 'could have done [anything] had [he] been at the [hearing] nor would [he] have gained anything by attending." *Stincer*, 482 U.S. at 747 (quoting *United States v. Gagnon*, 470 U.S. 522, 527 (1985)). No

such indication is present in this matter.  Petitioner has not demonstrated that his due

process rights were violated, and, therefore, Ground Four will be dismissed.

### 4.    Ground Five

In Ground Five, Petitioner asserts that his due process rights were violated

when he was denied his right to discovery.  (Doc. No. 12 at 31.)  Petitioner suggests

he was denied copies of discovery notes that set forth Anthony Moore and Gene the

taxicab driver as alibi witnesses.  (*Id.*)   According to Petitioner, he requested

documents consisting of statements from these individuals that they were with

Petitioner at the time of the alleged assault.  (*Id.*)

> With respect to this claim, the Superior Court stated:
>
> With respect to his third claim, [Petitioner] contends the PCRA court
> committed a "due process error" when it twice failed to grant
> [Petitioner's] request for discovery.   [Petitioner's] Brief at 33-35.
> [Petitioner] contends this discovery was necessary "to properly raise"
> an "alibi witness claim and properly subpoena his alibi witness[.]"
> [Petitioner's] Brief at 34.
>
>> In PCRA proceedings, discovery is only permitted upon
>> leave of court after a showing of exceptional
>> circumstances.  42 Pa. C.S. [] § 9545(d)(2); Pa. R. Crim.
>> P. 902(E)(1).  The PCRA and the criminal rules do not
>> define the term "exceptional circumstances."  Rather, it is
>> for the trial court, in its discretion, to determine whether a
>> case is exceptional and discovery is therefore warranted.
>
> *Commonwealth v. Frey*, 41 A.3d 605, 611 (Pa. Super. 2012).  "The
> denial of a request for post-conviction discovery is reviewed for an
> abuse of discretion.  Discovery in PCRA proceedings cannot be used as
> an excuse for engaging in a 'fishing expedition.'"  *Commonwealth v.
> Edmiston*, 65 A.3d 339, 353 (Pa. 2013) (internal citation omitted).  "We

have explained that [d]iscretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth v. Flor*, 136 A.3d 150, 154 (Pa. 2016) (internal quotation marks omitted).

After [Petitioner] filed his *pro se* PCRA petition, he filed a petition for discovery on April 3, 2018. Therein, [Petitioner] requested an "unabridged copy of discovery" pertaining to his case. Petition for Discovery, 4/3/2018, at 1. [Petitioner] stated that without such discovery, an amended PCRA petition "would be looked/ruled upon as bald assertions, and unfounded conclusory allegations." *Id.* Notably, [Petitioner] failed to elaborate on what discovery would be pertinent to which issues that he intended on presenting in his amended petition.

That same day, the PCRA court denied [Petitioner's] request for discovery because [Petitioner] failed "to satisfy the exceptional circumstances requirement of Pa. R. Crim. E. 902(E)(1)" and because [Petitioner's] request was "vague." Order, 4/3/2018. [Petitioner] did not attempt to amend his petition further nor did [Petitioner] contest the PCRA court's finding that his vague requests did not satisfy the exceptional circumstances requirement entitling [Petitioner] to discovery. Furthermore, [Petitioner] has not argued on appeal that the PCRA court abused its discretion in finding as such. Thus, no relief is due. *See Frey*, 41 A.3d at 611 ("We will not disturb a court's determination regarding the existence of exceptional circumstances unless the court abused its discretion . . . . Moreover, we recall that the appellant has the duty to convince us an abuse occurred.") (internal citations omitted).

(Doc. No. 14-11 at 4-5.)

As an initial matter, it appears that Petitioner takes issue with the denial of his discovery request during PCRA proceedings. As noted *supra*, however, habeas proceedings are not the appropriate forum to pursue such claims of error. *See Lambert*, 387 F.3d at 247; *Hassine*, 160 F.3d at 954-55. While unclear, Petitioner

may be asserting that his due process rights were violated before trial because the Commonwealth failed to provide exculpatory evidence. The government has a duty to disclose to a criminal defendant any exculpatory evidence that is material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Failure to do so violates a defendant's due process rights. *Id*. at 86, 87. A *Brady* violation occurs when "(1) evidence was suppressed; (2) the evidence was favorable to the defense; and (3) the evidence was material to guilt or punishment." *Simmons v. Beard*, 590 F.3d 223, 233 (3d Cir. 2009) (quoting *United States v. Risha*, 445 F.3d 298, 303 (3d Cir. 2006)). Evidence is "material" if there is a reasonable probability that, but for the prosecution's failure to disclose the evidence, "the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Here, however, Petitioner has not demonstrated, and the record does not indicate, that any exculpatory evidence was withheld from Petitioner by the Commonwealth. Petitioner, therefore, is not entitled to relief for this claim, and Ground Five will be dismissed.

### 5.    Ground Six

In Ground Six, Petitioner asserts that trial counsel rendered ineffective assistance by failing to call alibi witnesses to sustain Petitioner's actual innocence claim. (Doc. No. 12 at 35.) According to Petitioner, counsel should have called Gene the cab driver and Anthony Moore as witnesses. (*Id.*) Petitioner argues that,

during trial, he testified that he was with Moore at the time of the assault.  (*Id.*)  He

maintains that his alibi witnesses would have testified that he was dropped off at

Moore's house, which was nowhere "near the incident of assault," between 2:55 and

3 a.m.  (*Id.* at 36.)

With respect to this claim, the Superior Court stated:

Lastly, [Petitioner] contends trial counsel was ineffective for failing to call two alibi witnesses: "Gene 'the Harrisburg [c]ab [d]river]' and Anthony Moore."  [Petitioner's] brief at 36.

In order to establish that trial counsel was ineffective for failing to call witnesses, a petitioner must: (1) identify the witness or witnesses; (2) demonstrate that counsel actually knew, or had a duty to know, the identity of the witness or witnesses prior to trial; (3) demonstrate that the witness or witnesses were ready, willing and able to testify for the defense at trial; and (4) demonstrate that the proposed testimony would have been helpful to the defense asserted at trial.

*Commonwealth v. Neal*, 713 A.2d 657, 663 (Pa. Super. 1998).

In considering [Petitioner's] claim of ineffective assistance of counsel for failing to call witnesses, the PCRA court found [Petitioner] was not entitled to relief because [Petitioner] failed "to show that the witnesses existed and [were] available at the time of trial.  Nor did [Petitioner] attach an affidavit or some other means to show that the witnesses were willing and able to appeal.  Finally, [Petitioner] provided no information as to what this proposed testimony would reveal[.]" Memorandum Order, 8/29/2019, at 4-5.  Upon review of the record and applicable filings, we agree.

"Failure to call an alibi witness does not *per se* constitute ineffective assistance of counsel."  *Commonwealth v. Lilliock*, 740 A.2d 237, 245 (Pa. Super. 1999).  Thus, [Petitioner] needed not only to identify the alleged alibi witnesses, but [Petitioner] also had the burden of proving

that these alleged witnesses were known to counsel, were willing and able to testify at trial and that their proposed testimony would have been helpful to the defense. *See Neal, supra.*

Presumably, based upon [Petitioner's] testimony at trial that he was with Anthony Moore the night of the assault, defense counsel knew of this potential witness. [Petitioner] baldly asserts that these witnesses would have provided favorable testimony to support [Petitioner's] defense that he was not in the area where the assault took place. Such a bald assertion, without more, does not meet his burden.

Moreover, and most notably, [Petitioner] has failed to demonstrate that these witnesses were willing and able to testify on his behalf at trial. This alone precludes [Petitioner] from obtaining relief. *See Commonwealth v. Khalil*, 806 A.2d 415, 422-23 (Pa. Super. 20020 ("This Court will not grant relief based on an allegation that a certain witness may have testified in the absence of an affidavit from that witness to show that the witness would, in fact, testify."). Because [Petitioner] failed to sustain his burden of demonstrating ineffective assistance of counsel, he is not entitled to relief.

(Doc. No. 14-11 at 5-6.)  The Superior Court also noted that while testimony was presented regarding Petitioner's frequent use of taxis, "there was no mention of Gene 'the Harrisburg cab driver.'  Thus, there [was] no indication that counsel was aware of this 'witness.'"  (*Id.* at 7.)

"There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect."  *Harrington v. Richter*, 562 U.S. 86, 109 (2011).  With respect to a claim that counsel failed to call a certain witness, a petitioner "cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations that some unspecified and

speculative testimony might have established his defense.  Rather, he must set forth

facts to support his contention."  *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d

Cir. 1991).  Upon review of the record, the Court concludes that Petitioner has not

demonstrated that the state court's disposition of Ground Six was contrary to, or was

an unreasonable application of, United States Supreme Court precedent.  Nothing in

the record suggests that trial counsel was aware of Gene the cab driver.  Moreover,

Petitioner has not demonstrated that Anthony Moore was willing and able to testify

on his behalf.  Thus, Petitioner has not demonstrated that counsel was ineffective for

failing to call these individuals as witnesses during his trial.  *See Riddick v. Link*, No.

3:17-cv-740, 2020 WL 2847870, at *15-16 (M.D. Pa. June 2, 2020) (concluding

same).  Accordingly, Petitioner's sixth ground for relief must be dismissed.

## IV.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a

certificate of appealability ("COA"), an appeal may not be taken from a final order

in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has

made a substantial showing of the denial of a constitutional right.   28 U.S.C.

§ 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of

reason could disagree with the district court's resolution of his constitutional claims

or that jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322 (2003).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In the instant matter, jurists of reason would not find the disposition of Petitioner's petition debatable.  As such, no COA will issue.

## V.   CONCLUSION

For the foregoing reasons, Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) will be denied and a COA will not issue. An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Dated: January 25, 2021